DOWNEY, Judge.
This is an appeal from a final judgment entered in favor of appellant, Wilkes, in a suit for injuries arising out of an automobile accident with appellee, Colongelo.
The accident in question occurred in Fort Lauderdale in December, 1987. Wilkes was treated by Dr. John Mahoney, who advised her that she had sustained a soft-tissue injury and that she would likely have symptoms for several weeks or possibly months. He recommended she gradually wean herself off of the cervical collar that she had been wearing, try to return to work, take aspirin, and the headaches she was experiencing would disappear. Wilkes moved to St. Augustine and did not see Dr. Mahoney again until the first day of trial.-
In November, 1988, Wilkes commenced this suit, alleging, among other things, that she sustained a permanent injury in the accident. The case proceeded through the discovery phase and came on for trial on December 12 and 13, 1989. Colongelo admitted liability, leaving as the issue to be tried only the permanency of her injuries vel non, and damages.
Wilkes called Dr. Mahoney as a witness, but his testimony was limited by the court to his examination and findings during Wilkes’s visit in December, 1987, because of the earlier cut-off date for discovery. He was precluded from testifying as to his *177 examination and findings made as a result of Wilkes’s visit during the first day of trial.[1] The court admonished the doctor:
Dr. Mahoney, I have ruled that it is highly inappropriate for Miss Wilkes to have been examined by you yesterday during the trial, and I have ordered that there be no reference by anybody to that visit and that your opinions not be based on what you learned by reason of that visit.
After testifying to his examination and findings in December, 1987, he stated that he expected no resulting permanent injury. Whereupon, Wilkes propounded the following hypothetical question to the witness and received the following answer:
Q. [By Ms. Santa Maria] Doctor, I would like you to assume hypothetically that since December of 1987 Anna Wilkes has had continued problems with her neck in the way of pain, headaches, occasional dizziness, and that she has had these problems intermittently between the time of December ’87 up to and including the present date.
Assuming these things to be true, would you have an opinion within a reasonable degree of medical probability as to whether she sustained a permanent injury as a result of the accident of November 1987?
A. Depending on the severity of them I think — Yes, I think that’s likely she did have a permanent disability, depending on the severity of the symptoms.
On cross-examination, defense counsel reviewed again the doctor’s earlier conclusion that the injuries would probably heal in time without any permanent residual injury. The following interrogation was then proffered:
Q. Doctor, can you tell us that had you not seen her yesterday — Let me ask it another way. The fact that you saw her on two occasions yesterday, can you tell us with certainty that that did not impact upon your answer to the hypothetical question that counsel asked you?
In other words, if you had been asked — You saw her on December 11th, 1987. Your opinion was that she had no permanent injury, would sustain no permanency, and you had no other information. Can you honestly tell us that that didn’t impact on your answer to the hypothetical question?
A. No.
Q. I mean it did impact; didn’t it?
A. Yes, it did.
Defense counsel then moved to strike Dr. Mahoney’s testimony in answer to the hypothetical question propounded by Wilkes. Ruling on the motion was reserved and the evidence concluded with testimony from Wilkes and her father as to the residual effects of her injuries. The jury returned a verdict finding that Wilkes suffered permanent injuries in the accident and awarded her $17,480. Colongelo’s renewed motion to strike was granted and judgment was entered for Wilkes for only $1,680, being the amount of her past loss of earning capacity.
Wilkes contends, and we agree, that the information adduced in the cross-examination of Dr. Mahoney was not of such a character as to justify striking the doctor’s answer to the hypothetical question regarding permanency of Wilkes’s injuries. Wilkes had posed a hypothetical question that gave the doctor sufficient information otherwise proven in the case upon which he would reach a judgment as to whether Wilkes’s injuries were, in his opinion, permanent. He unequivocally stated that, based upon the information contained in the hypothetical, he believed they were permanent. The subsequent answer that the later examination did “impact” upon his answer to the hypothetical is simply too vague to justify striking the most vital bit of evidence the plaintiff adduced in her own behalf. The problem lies in the cross-examiner’s not pursuing the point to clearly show that, but for the later examination, he would not have concluded the injuries were permanent. For example, if pressed to explain what he meant by “impacted,” *178 he might have said: regardless of the later examination, I would answer the hypothetical as I did. However, the later examination only served to shore up that opinion. Thus, we believe that the cross-examination stopped short of proving the telling point that the cross-examiner sought to make.
Accordingly, we reverse the judgment appealed from and remand the cause with directions to enter judgment for appellant in accord with the jury verdict.
STONE and POLEN, JJ., concur.

. No issue is made here regarding the propriety of applying the discovery cut-off date to Dr. Mahoney’s update examination on the day of trial.